OPINION
Defendant-appellant Gary L. Bennett appeals his conviction and sentence in the Delaware Municipal Court on one count of domestic violence, in violation of R.C. 2919.25(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On December 16, 1997, at approximately 5:00 p.m., Officer Donald Claar of the Delaware City Police Department was dispatched to the Speedway Gas Station on London Road, in Delaware, Ohio. Upon the officer's arrival, Missy Stadler approached his cruiser and informed Officer Claar she had been assaulted by appellant, her live-in boyfriend of ten years. Thereafter, Stadler signed and swore to a complaint, and appellant was arrested. At his arraignment on December 18, 1997, appellant entered a plea of not guilty to the charge. The matter proceeded to trial on January 28, 1998.
At trial, Officer Claar testified he responded to the call at 5:03 p.m. on December 16, 1997. When the officer arrived at the gas station, he observed Missy Stadler. The officer stated Stadler approached his cruiser. He continued, "She was crying. She was very upset. Seemed to be agitated. Complaining about pain in her right eye. She told me she had been assaulted by [appellant] at their residence * * *". Transcript of the Proceedings at 14. The trial court overruled appellant's trial counsel's objection to the officer's description of Stadler's demeanor under Evid.R. 801(1) and (2)[1]. The officer stated he did not observe any visible injuries on Stadler despite her complaining of pain.
When the officer inquired about the situation, Stadler explained an argument ensued between appellant and her. She informed the officer appellant kicked her in the buttocks. As she tried to get away from appellant, he forced her to the ground. Stadler told Officer Claar appellant struck her on the right side of the head and ripped her keys out of her hand. Stadler ultimately fled the residence and walked to the Speedway, which is approximately three blocks from her residence.
After obtaining the foregoing information, Officer Claar drove Stadler back to the residence. The officer requested a second officer to assist him in questioning appellant. When Officer Todd Ekleberry arrived, the officers entered the residence and found appellant in the kitchen. Officer Claar explained to appellant the reason for the officers' visit. According to Claar, appellant stated Stadler returned home and an argument ensued over one of her friends, whom appellant did not want at their home. Officer Claar testified appellant told him Stadler began to throw things at him. Stadler returned to the living room, and pushed appellant into the television set. Appellant told Officer Claar he grabbed Stadler and pushed her onto the floor. When the officer asked appellant about whether he kicked Stadler in the buttocks or hit her in the eye, he denied such behavior. Appellant did not offer any explanation as to how Stadler received her injuries.
Officer Ekleberry testified he arrived at appellant's residence at approximately 5:10 p.m. on the day of the assault. He explained, while Officer Claar spoke with appellant, he spoke with another occupant of the residence. This occupant told Officer Ekleberry he was present during the incident, but was asleep and did not hear anything. After he concluded his questioning of the occupant, the officer exited the residence and returned to Officer Claar's cruiser to speak with Stadler. When asked to describe Stadler's demeanor, Ekleberry, stated, "You could tell she had been crying. She had red, swollen cheeks. She was upset about what had transpired * * *". Tr. at 34. The trial court sustained appellant's trial counsel's objection to Ekleberry's description of Stadler.
Upon the completion of Officer Ekleberry's testimony, the State rested. Thereafter, appellant's trial counsel made an oral motion for acquittal pursuant to Crim.R 29, which the trial court overruled.
Prior to the commencement of appellant's defense, the State informed the trial court Stadler was going to offer testimony different from the original statement she made to the police. The State requested the trial court advise Stadler of her rights and the potential penalties for the failure to truthfully testify. Appellant's trial counsel advised the court such a procedure was unnecessary because both sides had spoken with Stadler and he believed she was fully aware of her actions. Outside of the presence of the jury, the trial court addressed Stadler as follows:
 * * * I do want to make you aware that under the law, if you make a sworn statement today concerning the same matter that you had previously sworn to, and if your testimony today contradicts your previous sworn statement, then the Prosecution could charge you with perjury or falsification. And under the law, it would not be necessary for them to prove which of your statements was false. But that merely you've made two contradictory sworn statements on the same point. Additionally, I want you to be aware that the Court has certain inherent authority to cite persons for contempt of court. If the Court is convinced, beyond a reasonable doubt, that the person is interfering or disrupting the administration of justice and the Court also has that authority which I can exercise similarly. Tr. at 61-62.
Thereafter, appellant commenced his defense. Appellant called Missy Stadler as his only witness. Stadler testified, when she returned home on the afternoon of December 16, 1997, she confronted appellant about another woman, with whom she believed appellant was having an affair. Stadler explained, because appellant laughed off her concerns, she became enraged and began to throw things at him. She described appellant's attempts to calm her down. The witness explained appellant's actions only angered her more and she continued to scream and yell at him. Stadler denied appellant kicked her in the buttocks, but stated he jokingly tapped her on her bottom. Regarding the black eye, Stadler explained she was struck by a door in their residence which constantly sticks. Regarding the several fingernails she told police she broke during the dispute, Stadler admitted she had broken her fingernails earlier that day.
When appellant's trial counsel questioned Stadler regarding why her testimony to the jury differed from her statement to the police, Stadler explained she was angry with appellant and wanted to get back at him. Stadler testified she assumed she could drop the charges after the complaint was filed.
On re-direct examination, appellant's trial counsel asked Stadler if she was aware she could be prosecuted for making a false statement. The trial court sustained the State's objection to the question. Appellant's trial counsel questioned Stadler in order to clarify her previous testimony and, thereafter, rested his case.
Outside the presence of the jury, the trial court addressed Stadler as follows:
 * * * Ms. Stadler, you want to take the witness stand again for me please. Ma'am, prior to you being called as a witness, the Court did caution you as to your obligations to tell the truth here in these proceedings. And upon listening to your testimony today, I am convinced, beyond a reasonable doubt, that you have given false testimony as part of these proceedings.
* * *
 Previously, you signed an affidavit that you have indicated here was sworn to. Correct?
* * *
 Today, you were sworn and you testified contradicting your statement in your earlier sworn affidavit that you were punched in the eye by [appellant]. Now, I am convinced, beyond a reasonable doubt, that sworn statements that you've made during the course of these proceedings have had an obstructive affect [sic] on the administration of justice . . . Accordingly, the Court is going to cite you with Criminal Contempt. I am going to order that you be remanded to the Delaware County Jail forthwith. You can take her into custody for a term of 30 days. 30 days.
Tr. at 88-89.
After hearing the evidence and deliberations, the jury found appellant guilty of domestic violence. The trial court sentenced appellant to 180 days in jail.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT PERMITTED HEARSAY TESTIMONY CONCERNING THE ALLEGED VICTIM'S STATEMENT TO POLICE, WHERE THE STATEMENT WAS MADE AFTER LAPSE OF TIME AND WITHOUT SUFFICIENT INDICIA OF RELIABILITY.
 II. THE TRIAL COURT ERRED WHEN IT EXCLUDED TESTIMONY BY THE ALLEGED VICTIM THAT THE STATE HAD THREATENED HER WITH CRIMINAL PROSECUTION IF HER TESTIMONY AT TRIAL WAS AT VARIANCE WITH HER STATEMENT TO POLICE.
 III. THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant maintains the trial court erred in admitting hearsay testimony regarding the victim's statement to the police. Specifically, appellant asserts Stadler's statement to Officer Claar does not qualify as an excited utterance because too much time lapsed between the event and Stadler's declaration and the statement did not have a sufficient indicia of reliability.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Statev. Adams (1980), 62 Ohio St.2d 151, 157.
Evid.R. 803(2) provides:
 Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The controlling factor in determining whether a statement is an excited utterance is whether the statement was made under such circumstances as would reasonably show it resulted from impulse rather than reason and reflection. State v. Smith (1986),34 Ohio App.3d 180, 190.
In determining whether a statements qualifies as an "excited utterance" under Evid.R. 803(2), the trial court must consider the following factors:
 (1) the lapse of time between the event and the declaration;
(2) the mental and physical condition of the declarant;
(3) the nature of the statement; and
(4) the influence of intervening circumstances.
 State v. Rocker (Aug. 20, 1996), Guernsey App. No. 94CA28, unreported (Citation omitted).
In Porter v. Baker (1955), 162 Ohio St. 488, para. two of syllabus, the Ohio Supreme Court established a four-part test to determine the admissibility of a spontaneous exclamation:
 Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs (c) that the statement or declaration related to such startling occurrence or the circumstances of each startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. (Emphasis sic).
In the instant case, the admissibility of Stadler's statement to the police would depend upon the trial court's finding Stadler was still under the stress of the startling occurrence. See,State v. Taylor (1993), 66 Ohio St.3d 295, 303. Accordingly, we shall review the testimony of Officer Claar to determine the nature of Stadler's declaration. The officer testified as follows:
 Prosecution: And could you please describe for the jury in the Court what Missy was like when you first had contact with her.
 Off. Claar: I pulled into the Speedway and I observed her. She was using the telephone. I waited for her to get off the telephone. She approached my cruiser. She was crying. She was very upset. Seemed to be agitated. Complaining about pain in her right eye. She told me she had been assaulted by [appellant] at their residence at 35 —
Mr. Yost [Appellant's trial counsel]: Objection.
 The Court: Overruled. 801(2) and 801(1). Go ahead please.
Prosecution: Go ahead Officer.
 Off. Claar: She stated that she had been assaulted by [appellant] at their residence at 35 Sheldon Street.
Prosecution: And could you see any injuries on Missy?
 Off. Claar: At that time, I didn't see any visible injuries. Her eyes were red. Like I said, she was crying and complaining of pain, but I didn't see anything.
 Prosecution: Did you ask her if she wanted medical attention?
 Off. Claar: Yes. I asked her if she wanted the emergency squad to respond there and check over her injuries and she declined that.
 Prosecution: And you stated that she told you that she was assaulted at 35 Sheldon Street. How far is that location, distance wise, away from the pay phone at Speedway?
 Off. Claar: It's easily within walking distance. Approximately three blocks.
Tr. at 14-15.
The statement was made before there had been time for the nervous excitement caused by the event to lose domination over Stadler's reflective faculties. After the incident, Stadler walked approximately three blocks to the Speedway Gas Station. Upon arriving at the Speedway shortly thereafter, the officer observed the victim on the pay phone. Officer Claar noticed Stadler was crying, very upset, and agitated. When the officer spoke with Stadler, she complained about pain in her right eye. The officer learned Stadler had been assaulted by appellant. Clearly, Stadler was still under the stress of the event when she recounted the incident to the police officer minutes after the assault. Additionally, the statement was not influenced by any intervening circumstances.
We now turn our focus to Stadler's mental and physical condition at the time she made the statement, and the nature of that statement. Regarding the victim's mental condition, the officer described her as crying, very upset, and agitated. The description of an individual as crying, upset, and agitated is sufficient to establish the requisite mental condition of a declarant. Regarding Stadler's physical condition, she stated she was experiencing pain in her right eye and experiencing the aftereffects of the assault. With respect to the nature of the statement, Stadler initially informed Officer Claar appellant assaulted her. Thereafter, she explained she and appellant had an argument which escalated into the assault. Stadler described appellant's kicking her and forcing her to the ground. Additionally, she recalled appellant's striking her on the right side of the head and ripping her keys out of her hand. Officer Claar's recollection of Stadler's description of the incident clearly indicates the spontaneity of the declaration. Stadler gave Officer Claar a general statement and slowly provided additional details.
Keeping in mind our standard of review, and in light of the totality of the circumstances, we find the trial court's admission of Officer Claar's testimony relating the statement Stadler made to him was not unreasonable, arbitrary or unconscionable; therefore, not an abuse of discretion.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends the trial court erred in excluding Stadler's testimony the State had threatened her with criminal prosecution if her trial testimony varied from her police statement.
During Stadler's direct examination, appellant's trial counsel asked, "Now, are you aware of the fact that you could be prosecuted for making a false statement?" Tr. at 85. The trial court sustained the State's objection to the question. Appellant did not proffer evidence Stadler would have testified the State threatened her with criminal prosecution. It is incumbent upon the party seeking to introduce the evidence, who has been precluded from doing so, to proffer the evidence at trial. Evid. R. 103(A)(2). If no proffer is made, the party seeking to introduce the evidence in question waives the error on appeal.State v. Brooks (1989), 44 Ohio St.3d 185. Because appellant failed to proffer Stadler's testimony at trial, he waived any error.
Assuming, arguendo, appellant properly preserved any error for appeal, the trial court has broad discretion when determining whether the probative value of evidence substantially outweighs the danger of unfair prejudice, and we will not interfere, absent an abuse of discretion. State v. Allen (1995), 73 Ohio St.3d 626. Although we might agree the question as posed by appellant's trial counsel may have been proper, we cannot say the trial court abused its discretion in sustaining the State's objection to the question.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant raises a manifest weight claim.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
In his Brief to this Court, appellant places great emphasis on Stadler's trial testimony. Appellant argues because Stadler stated she lied to police, and offered a different version of the events of the afternoon of December 16, 1997, as well as different causes of her injuries, the jury should have believed her trial testimony and lost its way in failing to do so.
At trial, Officers Claar and Ekleberry recounted the assault as described to them by Stadler immediately after the incident. Stadler gave both a signed police statement, and also swore to and signed a complaint. At trial, Stadler presented a different version of the events.
Upon our review of the record and the facts set forth supra,
we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Although Stadler testified she previously lied to the police, the jury was free to reject all of her testimony. The jury decided Stadler's prior statements were more reliable. The record contains sufficient evidence to support the verdict.
Appellant's third assignment of error is overruled.
The conviction and sentence of the Delaware Municipal Court is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware Municipal Court is affirmed. Costs assessed to appellant.
[1] This Court is aware there is not an Evid.R. 801(1) or 801(2).